UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINE E. JOHNSON,

        Plaintiff,

v.                                 Case No. 8:13-cv-2593-T-23AEP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff initiated this action seeking judicial review of the termination of her widow's insurance benefits (Doc. 1). Pursuant to the Court's Scheduling Order (Doc. 12), Plaintiff timely filed her memorandum of law opposing the decision of the Commissioner (Doc. 13). In response, the Commissioner filed a Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) with Remand (Doc. 16), which indicates that Plaintiff opposes the relief requested. By the motion, the Commissioner seeks entry of judgment under sentence four of 42 U.S.C. § 405(g) with remand for further administrative review. Namely, the Commissioner contends that the case should be remanded back to the Appeals Council, which will instruct the Administrative Law Judge ("ALJ") to reconsider, pursuant to the Social Security Administration's ("SSA") applicable Program Operations Manual System ("POMS") sections and regulations, the issue of reopening the November 2006 Cost of Living Adjustment ("COLA") determination that occurred within four years of the October 23, 2014 determination terminating Plaintiff's entitlement to widow's insurance benefits. In addition, the Commissioner states that "the ALJ will consider other

questions related to the overpayment and reopening issues" but fails to identify those questions with any sort of specificity (Doc. 16, at 2). As indicated, Plaintiff opposes the Commissioner's request, arguing that the proposed remand is vague, a waste of administrative resources, unduly burdensome on Plaintiff, and will result in unreasonable delays in the adjudication of her case (Doc. 17). As a result, Plaintiff contends that the case should be remanded with an immediate reinstatement of benefits. In reply, the Commissioner contends that the case should be remanded to resolve issues relating to a "similar fault determination" and the statements of the Appeals Council regarding same. For the reasons that follow, it is recommended that the Commissioner's Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) with Remand (Doc. 16) be granted in part and denied in part, such that the decision of the Commissioner be reversed, the matter be remanded, and Plaintiff's widow's benefits be reinstated.[1]

## I.  Background

Plaintiff, who was born in July 1931, married her first husband, Richard Roberson, and remained married to him for 28 years until Mr. Roberson's death in July 1980 (Tr. 237, 239). Subsequently, Plaintiff married Neil Johnson on August 30, 1982, in Vail, Colorado (Tr. 237, 243). Mr. Johnson was previously married, and, less than 30 days prior to his marriage to Plaintiff, Mr. Johnson concluded his divorce proceedings (Tr. 242-43). Notably, his divorce decree indicated that neither Mr. Johnson nor his previous wife could marry within 30 days of the divorce decree (Tr. 178-194C, 242-44, 246). As a result of the 30-day provision in the divorce decree, Plaintiff and Mr. Johnson were unclear as to the validity of their 1982 marriage. Given

---

[1] The matter has been referred to the undersigned for issuance of a report and recommendation. *See* 28 U.S.C. § 636; M.D. Fla. R. 6.01.

the lack of clarity as to the validity of their marriage, Plaintiff "remarried" Mr. Johnson in Florida

on August 30, 1991 (Tr. 237-38, 242-44). No determination was ever made regarding the validity

of either the 1982 or 1991 marriage between Plaintiff and Mr. Johnson (*see* Tr. 244). Since 1982,

however, Plaintiff and Mr. Johnson have held themselves out as married, including the filing of

tax returns listing that she was married since 1982 and indicating that she changed her name and

used the married name of "Johnson" since 1982 (Tr. 195-98, 250).

Following Mr. Roberson's death, and following the 1982 and 1991 marriages to Mr.

Johnson, Plaintiff applied for Social Security benefits in February 1993 (Tr. 238). At the time,

Plaintiff was 61 years old. Initially, Plaintiff sought insurance coverage as a result of a heart

condition, but, upon the suggestion of a SSA representative, she applied for survivor's benefits

as the widow of Mr. Roberson (Tr. 238-40). Plaintiff asserts that, at the time she applied for

benefits, she provided two marriage certificates for her marriage to Mr. Roberson and two

marriage certificates for her marriage to Mr. Johnson, a detail which was noted on the Social

Security Application Development Form as "2+2" (Tr. 55-61, 170, 172-76, 241-44). Plaintiff

also provided an explanation regarding the marriages to Mr. Roberson and Mr. Johnson to the

SSA representative at the time she provided the marriage certificates (Tr. 244). On March 21,

1993, Plaintiff received a Notice of Award from the SSA informing her that she was entitled to

monthly widow's benefits beginning February 1993 (Tr. 199-201). Accordingly, following the

award of benefits, Plaintiff began receiving widow's benefits based on Mr. Roberson's record.

Years later, in August 2010, Mr. Johnson filed an application for Social Security benefits.

When he applied, Mr. Johnson provided both the 1982 and the 1991 marriage certificates to the

3

SSA (Tr. 202, 245).   Shortly thereafter, on October 23, 2010, Plaintiff received an initial overpayment notice from the SSA informing her that the SSA would not pay her survivor's benefits beginning October 2010 (Tr. 28-29).[2]  The notice stated that the SSA's records indicated that Plaintiff remarried in August 1982, prior to Plaintiff attaining the age of 60, and noted that a claimant cannot receive survivor's benefits if the claimant remarries before the age of 60, unless the latter marriage ends by death, divorce, or annulment (Tr. 28).

Subsequently, on December 20, 2010, Plaintiff filed a Request for Reconsideration (Tr. 46-48).   During the reconsideration process, a January 2011 Report of Contact indicated that, upon review of the file documentation, the claim Plaintiff submitted for widow's benefits showed that she submitted proof of marriage for the 1991 marriage to Mr. Johnson but that Plaintiff did not state anything about the 1982 marriage to Mr. Johnson (Tr. 202).  According to the SSA, the evidence was obtained when Mr. Johnson filed his claim for retirement benefits in August 2010 after being asked to establish proof of his marriage to Plaintiff (Tr. 202).  Accordingly, the SSA reasoned that the SSA representative who initially processed Plaintiff's application would have had no way to determine that Plaintiff married Mr. Johnson prior to 1991 (Tr. 203).  Additionally, the SSA noted that Plaintiff purportedly did not change her last name to Johnson until July 1993, so the evidence in the file showed the "possibility that [Plaintiff] did not want SSA to know that she had married Neil Johnson on Aug. 30, 1982" (Tr. 203).  The SSA representative went further, noting that there appeared to be no reason for the SSA to state that the claims representative who took the claim for remarried widow's benefits from Plaintiff erred when she took the claim, and,

---

[2]  Notably, Plaintiff was 79 years old when she received the October 23, 2010 notice.

thus, Plaintiff should be held accountable for any overpayment (Tr. 203).

Plaintiff's Request for Reconsideration was later denied on February 27, 2011 (Tr. 69-71). In denying the request for reconsideration, the SSA again stated that the reason Plaintiff was not entitled to widow's benefits was her August 1982 marriage to Mr. Johnson (Tr. 69). The SSA informed Plaintiff that she had the right to request a hearing if she disagreed with the decision (Tr. 70). As a result, in March 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 72-73).

Months later, on November 23, 2011, Plaintiff received a letter from the SSA informing her that she received an overpayment of benefits in the amount of $216,478.30 for payments made from February 1993 through September 2010 (Tr. 120-23). According to the letter, evidence in the SSA's file showed that Plaintiff married Mr. Johnson on August 30, 1982, in Vail, Colorado, and that Plaintiff reached the age of 60 on July 1, 1991 (Tr. 120). As a result of her marriage to Mr. Johnson before July 1, 1991, and the fact that her marriage had not ended, the SSA informed Plaintiff that she could not be entitled to widow's benefits on her deceased husband's record (Tr. 120). According to the SSA, because Plaintiff received benefits she was not entitled to, she had been overpaid and was required to refund the overpayment within 30 days (Tr. 120-21). Given that Plaintiff was underpaid $6,318.00 for benefits she was entitled to as a result of her marriage to Mr. Johnson, the balance the SSA stated Plaintiff owed totaled $210,160.30, or the $216,478.40 overpayment less the $6,318.00 underpayment (Tr. 120-21). The SSA informed Plaintiff that, if she could not refund the entire amount, she should submit a partial payment, an explanation of her financial circumstances, and a definite plan for repaying

5

the balance (Tr. 121).  Additionally, the SSA informed Plaintiff that it could sometimes waive

the collection of an overpayment, meaning Plaintiff would not have to pay back the overpayment

if it was not Plaintiff's fault that she received too much Social Security money and that paying

the SSA back would mean that Plaintiff could not pay her bills for food, clothing, housing,

medical care, or other necessary expenses, or it would be unfair for some other reason (Tr. 121).

Further, the SSA informed Plaintiff that, if she disagreed with the decision, she maintained a right

to appeal (Tr. 122).

In May 2012, the ALJ conducted the administrative hearing, at which Plaintiff appeared

with counsel and testified (Tr 229-55).  During the hearing, Plaintiff explained the details

regarding her marriages to both Mr. Roberson and to Mr. Johnson.  Notably, after Plaintiff

explained the issue with the divorce decree and why she "remarried" Mr. Johnson in 1991, the

ALJ said: "Right.  I gotcha.  I understand.  I understand why you did what you did" (Tr. 246) and

"it's not me not believing her" (Tr. 254).

A few weeks later, the ALJ issued his decision in which he concluded that Plaintiff was

liable for repayment of the overpayment with a recommended repayment schedule of $100 per

month (Tr. 19-27).  The ALJ framed the issues as (1) whether Plaintiff was overpaid survivor's

benefits under Mr. Roberson as a retired widow aged 60 if she remarried before the age of 60 and

(2) if overpaid, whether Plaintiff qualified for waiver of the overpayment, which would occur if

Plaintiff was without fault and adjustment or recovery would defeat the purpose of the Act or

would be against equity and good conscience (Tr. 22).  Initially, the ALJ determined that Plaintiff

was overpaid survivor's benefits (Tr. 24-25).  In doing so, he explained that the issue turned upon

6

whether Plaintiff was entitled to survivor's benefits because of the disputed date of her remarriage, *i.e.* whether she remarried prior to attaining the age of 60 because, under the regulations, a widow who remarries before age 60 cannot receive benefits under her former deceased spouse. The ALJ noted that Plaintiff was past the age of 60 at the time she filed her application for widow survivor's benefits in February 1993 and that her application included proof of her marriage to Mr. Johnson in August 30, 1991, which, if accurate, would indicate that she remarried shortly after turning 60 and would therefore demonstrate that the survivor's benefits she received would have been appropriate (Tr. 24).

The ALJ then noted that Mr. Johnson applied for retirement benefits for himself and Plaintiff and that Plaintiff applied for all benefits for which she was entitled in December 2010 (Tr. 24). With each of their applications, they provided a marriage date of August 30, 1982, which triggered the SSA's inquiry into Plaintiff's marital status regarding her entitlement to the survivor's benefits (Tr. 24). According to the ALJ, if Plaintiff and Mr. Johnson married in 1982, Plaintiff would have been 51 at the time of the marriage and thus not entitled to survivor's benefits under Mr. Roberson's record (Tr. 24-25). The ALJ concluded that the marriage license from the State of Colorado, issued on August 30, 1982, was properly authorized, valid, and proof of marriage and comported with Plaintiff's testimony that she married Mr. Johnson in 1982 (Tr. 25). As a result, the ALJ determined that Plaintiff was overpaid survivor's benefits because she remarried before attaining the age of 60 (Tr. 25).

Next, the ALJ determined that Plaintiff was not at fault in causing the overpayment (Tr. 25). In doing so, the ALJ found persuasive Plaintiff's testimony that she married Mr. Johnson

7

a second time in 1991 because she questioned the validity of her initial marriage to Mr. Johnson

in 1982 due to the timing of Mr. Johnson's divorce several weeks prior to his marriage to Plaintiff

(Tr. 25).   As the ALJ stated, Plaintiff was not sophisticated in the legal terms under domestic

statutes between and among different states (Tr. 25).   The ALJ went further, noting the argument

posited by Plaintiff's counsel that no overpayment existed because, though Plaintiff probably was

not entitled to survivor's benefits payments, the entitlement determination occurred in 1993 and

was thus administratively final and unable to be reopened, even if erroneous, absent fraud or

similar fault (Tr. 25).   The ALJ rejected that argument, stating that the "issue of fraud is not

properly before this office" and that the "initial eligibility in 1993 is not a determination that is

being reopened because of fraud or similar fault" (Tr. 25-26).   As the ALJ explained,

> This overpayment was realized in 2010, and this appeal arises from the date of the
> notice of overpayment in 2010 regardless of the months affected.   Moreover, an
> Administrative Law Judge has jurisdiction to consider the issue of reopening and
> revising any prior final determination when the current case before the
> Administrative Law Judge does not involve an application for benefits but
> involves some other issue, such as a post-entitlement issue. (See HALLEX I-2-9-
> 10) This overpayment is a post-entitlement issue.   The case involves material,
> correctable, clerical error with the application back in 1993, which was realized
> in 2010.   In this case, the claimant's own position in testimony is that she
> provided both dates of marriage to the Administration's representative and that the
> representative input erroneously the date of the later marriage.

(Tr. 26).

Following that determination, the ALJ concluded that recovery of the overpayment did

not defeat the purpose of Title II of the Social Security Act, as Plaintiff's income exceeded her

expenses and she could possibly afford to make some payments toward the overpayment (Tr. 26).

The ALJ also concluded, in a cursory fashion, that recovery of the overpayment would not be

8

against equity and good conscience (Tr. 26).  As the ALJ explained, recovery of the overpayment would go against equity and good conscience if Plaintiff changed her position for the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made – neither of which occurred in this case (Tr. 26).  Accordingly, given those findings, the ALJ determined that Plaintiff was liable for repayment with a recommended repayment schedule of $100 per month (Tr. 27).  In conclusion, the ALJ again reiterated that Plaintiff was not at fault for the overpayment during the period from February 1993 through September 2010 but nonetheless determined that Plaintiff was liable for the overpayment (Tr. 27).

Following the ALJ's decision, in July 2012, Plaintiff requested review by the Appeals Council, arguing that the ALJ's decision "gets the facts right, but the law wrong" (Tr. 17). Approximately a year later, the Appeals Council notified Plaintiff that it would review the ALJ's decision (Tr. 218-22).  As the Appeals Council noted, Plaintiff was not appealing the issue of overpayment identified in the ALJ's decision but rather sought review in response to the October 23, 2010 determination that Plaintiff was not entitled to widow's insurance benefits (Tr. 219). Although it had not yet received any further evidence or argument from Plaintiff, the Appeals Council stated in the notice that it planned to make a decision finding that Plaintiff was not entitled to widow's insurance benefits payments on Mr. Roberson's record as of February 1993 because evidence indicated that Plaintiff remarried before attaining age 60, and, as a result, the payments Plaintiff received from November 2006 through December 2010 were received in error and constituted an overpayment (Tr. 219).  The Appeals Council also explained that Plaintiff was not entitled to widow's insurance benefits at any time, given her 1982 marriage to Mr. Johnson,

but that it was improper to assess an overpayment all the way back to the date of Plaintiff's

entitlement in 1993 absent a finding of fraud or similar fault, of which there was no indication

in the record (Tr. 219).  The Appeals Council then explained further that:

> The October 23, 2010, determination was a correction of the Administration's
> action, and allowed for a reopening of a prior determination within four years of
> the date of the initial determination (20 CFR 404.988(b)).  Each year during the
> period that you received widow's benefits, you received a cost-of-living
> adjustment (COLA) notice about your payments.  A COLA is an initial
> determination subject to judicial and administrative review (POMS GN 03101.050
> C.).  The applicable determination in this case occurred in November 2006 (See
> Master Benefit Record).  In this case, the October 2010, determination ceasing
> your benefits is within four years of the November 2006, COLA determination.
> Since the reopening period could not extend beyond four years because of
> administrative finality, the Administration could only review the payments made
> from November 2006, through October 2010.  Therefore, the Appeals Council is
> prepared to find that you received benefits payments to which you were not
> entitled from November 2006 through October 2010, constituting an
> overpayment.

(Tr. 219-20).  The Appeals Council then provided Plaintiff 30 days to provide more evidence or

a statement about the facts and law in her case and ask for an appearance before the Appeals

Council (Tr. 220).  Plaintiff submitted supplemental briefing to the Appeals Council and

additionally requested an appearance before the Appeals Council but was not permitted to appear

(Tr. 13, 223-25).

On August 26, 2013, after receiving Plaintiff's supplemental proposed action and

arguments, the Appeals Council issued a partially favorable decision (Tr. 8-13).  In reaching its

decision, the Appeals Council reiterated that the 1993 entitlement was never appealed and is thus

final and binding but that the SSA may always make a new initial determination whenever a

change occurs in the factual situation, as it stated occurred in the instant case when the SSA

10

purportedly learned of Plaintiff's 1982 marriage to Mr. Johnson (Tr. 12).  As noted by the Appeals Council, Plaintiff argued that the facts had not changed concerning Plaintiff's marital history prior to and through the time the SSA awarded benefits in 1993 (Tr. 12). Notwithstanding, the Appeals Council found that the record was unclear as to whether Plaintiff reported both of her marriage dates to Mr. Johnson or just the 1991 marriage date when she applied for widow's insurance benefits and therefore concluded that the discovery of the 1982 marriage constituted a change in the facts that were considered during the initial entitlement (Tr. 12).  Accordingly, given that Plaintiff married Mr. Johnson in 1982, prior to turning 60, the SSA sent her the October 2010 termination of benefits notice and the November 2011 overpayment notice (Tr. 12).  According to the Appeals Council, it was improper to assess an overpayment all the way back to the date of Plaintiff's entitlement in 1993 absent a finding of fraud or similar fault (Tr. 12).  Importantly, the Appeals Council again noted that the record did not indicate a finding of fraud or similar fault (Tr. 12).

The Appeals Council then explained that the October 23, 2010 determination was a correction of the SSA's action and thus allowed for a reopening of a prior determination within four years of the date of an initial determination (Tr. 12).  According to the Appeals Council, Plaintiff received a cost-of-living adjustment ("COLA") notice about her payments each year during the period that she received her widow's benefits (Tr. 12).  The Appeals Council concluded, over Plaintiff's objection, that a COLA constitutes an initial determination subject to judicial and administrative review (Tr. 12).[3]  As a result, the Appeals Council concluded that the

---

[3] Plaintiff argued that a COLA determination does not constitute a conduit for a correction of a prior entitlement error (Tr. 12).

11

applicable determination occurred in November 2006, such that the October 23, 2010 determination ceasing Plaintiff's benefits was within four years of the November 2006 COLA determination (Tr. 12).  The Appeals Council stated that, since the reopening period could not extend beyond four years because of administrative finality, the SSA could only review payments made from November 2006 through October 2010 (Tr. 12-13).  Accordingly, the Appeals Council determined that Plaintiff received benefits payments to which she was not entitled from November 2006 through October 2010, thereby constituting an overpayment (Tr. 13).

Following issuance of the Appeals Council's partially favorable decision, Plaintiff timely filed a complaint with this Court (Doc. 1).  Plaintiff submitted her memorandum of law in opposition to the Commissioner's decision (Doc. 13), in which Plaintiff asserted that the Commissioner erroneously employed the regulatory vehicle of reopening to use a COLA notice as the basis for termination of Plaintiff's entitlement to widow's benefits.  In response, the Commissioner filed the instant motion for remand (Doc. 16), which Plaintiff opposes (Doc. 17). After conducting a hearing on the matter, the Commissioner filed a reply brief to further explain her position (Doc. 21).  Essentially, the Commissioner contends that the case should be remanded because the record was unclear as to whether Plaintiff reported both of her marriage dates to Mr. Johnson when she initially filed for widow's insurance benefits on the record of Mr. Roberson. The Commissioner argues that remand is necessary to resolve the question of whether Plaintiff reported both marriages to Mr. Johnson at the time she applied for benefits in 1993 and to conduct a "similar fault determination" to determine whether the Commissioner was entitled to an unrestricted reopening of the 1993 initial determination.  The case is now ripe for review under

42 U.S.C. § 405(g).

## II.        Standard of Review

Any final decision by the Commissioner must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g); *Wilson v. Barnhart* 284 F.3d 1219, 1221 (11th Cir. 2002)  (*per curiam*).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal, however.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The scope of review is thus limited to determining whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied.  *Wilson*, 284 F.3d at 1221.  Accordingly, while the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *See Keeton*, 21 F.3d at 1066 (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

13

### III.   Discussion

As Plaintiff frames it, the issue on appeal is whether the Commissioner erroneously employed the regulatory vehicle of reopening to use a notice of COLA increase as the basis for termination of Plaintiff's entitlement to widow's benefits.   Initially, to qualify for widow's benefits, a claimant must show that she is at least 60 years old, her husband was insured, and she was married to her husband for at least 9 months immediately before her insured husband died. 20 C.F.R. § 404.335(a) &(c); *see* 42 U.S.C. § 402(e).  If her husband died previously and she later remarries after attaining the age of 60, she may also receive widow's benefits for the predeceased insured husband.  20 C.F.R. § 404.335(e)(1); *see* 42 U.S.C. § 402(e).

As explained in greater detail above, in February 1993, Plaintiff applied for and subsequently received widow's benefits, despite her intention of only applying for insurance benefits for herself as a result of a heart condition (Tr. 199-201, 238-40).  Plaintiff, who was 61 years old at the time, received the widow's benefits as of February 1993 on behalf of Mr. Roberson after being married to him for 28 years until his death in July 1980 (Tr. 237, 239). According to Plaintiff, during the application process, she informed the SSA that, following the death of Mr. Roberson, she married Mr. Johnson in 1982, which was prior to attaining the age of 60, and again in 1991, shortly after turning 60 (Tr. 55-61, 241-44).[4]  At the time she applied for widow's benefits in 1993, Plaintiff asserts that she disclosed to the SSA representative both her 1982 and the 1991 marriages to Mr. Johnson.  According to Plaintiff, she did not withhold

---

[4]  As the parties agree, if Plaintiff's 1982 marriage to Mr. Johnson was valid, Plaintiff would never have been entitled to widow's benefits on Mr. Roberson's record. If, however, Plaintiff's 1982 marriage to Mr. Johnson was not valid, Plaintiff would have been entitled to widow's benefits on Mr. Roberson's record.

information from the SSA or attempt to defraud the SSA in order to receive widow's benefits.

The SSA subsequently awarded Plaintiff widow's benefits on Mr. Roberson's record based upon Plaintiff's 1991 marriage to Mr. Johnson, after she attained the age of 60.  The SSA did not question the propriety of the award of widow's benefits to Plaintiff until October 2010, or more than 17 years after the initial determination awarding benefits, and only after an application filed by Mr. Johnson for retirement benefits (Tr. 28-29, 245).  In fact, the application by Mr. Johnson for his own retirement benefits appears to have been the precipitating event for the October 23, 2010 notice from the SSA as nothing in the October 2010 notice, the February 2011 notice of reconsideration, or the November 2011 letter provide or reference any other reason for reopening the February 1993 determination awarding widow's benefits to Plaintiff (Tr. 28-29, 69-71, 120-23).[5]

Delving further into the record, however, it appears that the SSA initially suspected that Plaintiff deliberately hid her 1982 marriage to Mr. Johnson to facilitate the fraudulent receipt of widow's benefits rather than entertain the notion that the SSA representative who processed Plaintiff's application for widow's benefits mistakenly failed to consider Plaintiff's 1982 marriage to Mr. Johnson.  Namely, the January 2011 Report of Contact indicated that the SSA would have had no way to determine that Plaintiff married Mr. Johnson prior to 1991 because (1) Plaintiff purportedly did not change her last name to Johnson until July 1993; (2) a possibility existed that

---

[5] The failure to state the rationale for reopening violates the POMS, which requires the SSA to prepare an electronic writing or from containing the specific rationale whenever a determination is reopened, even if the reopening is precluded by the rules of administrative finality.  POMS GN 04001.080 A.  In fact, as dictated by the POMS, the mere mention that reopening does or does not apply is not a sufficient rationale.  POMS GN 04001.080 B.

Plaintiff did not want the SSA to know that she married Mr. Johnson on August 30, 1982; and (3) no apparent reason existed for the SSA to state that the claims representative who took the claim for remarried widow's benefits from Plaintiff erred when she took the claim (Tr. 203). Furthermore, the September 2011 Overpayment Summary referenced an ongoing fraud investigation by the Office of the Inspector General (Tr. 104-07) and a review sheet indicated that Plaintiff's case was classified as a fraud case (Tr. 113). As a result, the record reflects that the SSA reopened Plaintiff's February 1993 determination awarding Plaintiff widow's benefits upon a suspicion of fraud. As both the ALJ's decision and the Appeals Council's decision indicate, however, the record belies such a finding.

Specifically, though the ALJ determined that the issue of fraud was not properly before him, the ALJ explicitly determined that Plaintiff was not at fault in causing the overpayment (Tr. 25-26). In making the determination, the ALJ noted that

> What constitutes fault depends upon whether the facts show that an incorrect payment resulted from: an incorrect statement made by the claimant which she knew or should have known to be incorrect; a failure to furnish information which she knew or should have known to be material; or acceptance of payment which she either knew or could have been expected to know was incorrect (20 CFR 404.507). The claimant may be deemed without fault in an entitlement overpayment, when she accepts an overpayment because of reliance on erroneous information from an official source within the Social Security Administration regarding a pertinent legal provision (20 CFR 404.510a).

(Tr. 23). To reach the conclusion that Plaintiff was not at fault, therefore, the ALJ must have considered whether the facts showed that the overpayment to Plaintiff resulted from an incorrect statement made by Plaintiff which she knew or should have known to be incorrect, from a failure by Plaintiff to furnish information she knew or should have known to be material, and from

16

acceptance of payment by Plaintiff which she either knew or could have been expected to know was incorrect.  *See* 20 C.F.R. § 404.507.  In determining that Plaintiff was not at fault for the overpayment, the ALJ necessarily concluded that the overpayment was not a result of any incorrect statement or material omission on Plaintiff's behalf.  In fact, the ALJ stated that the "initial eligibility in 1993 is not a determination that is being reopened because of fraud or similar fault" (Tr. 26).  Rather, the ALJ explained that the overpayment was a post-entitlement issue involving "material, correctable, clerical error with the application back in 1993, which was realized in 2010" (Tr. 26).  As further support for his conclusion, the ALJ pointed to Plaintiff's testimony in which she stated that she provided both dates of marriage to the SSA representative, who then erroneously input the date of the later marriage (Tr. 26).

In requesting review of the ALJ's decision by the Appeals Council, Plaintiff's counsel succinctly and correctly set forth the errors with the ALJ's decision and the issues present through each level of review, namely:

> In the instant situation, the Field Office and the PC got the facts wrong by not developing them; factual conclusions based on conjecture, speculation, and suspicion.  However, the correct legal standard for reopening was appreciated: fraud or similar fault.  On the other hand, the Judge got the legal standard wrong, but the facts correct after inquiry.  The results are not only ironic, but pathetically tragic.

> Applying the facts as decided by the Judge to the correct legal standard against which they are to be measured leads to but one conclusion.  Because it was found this client had no culpability in causing the erroneous fully favorable determination of entitlement in 1993, that determination is not subject to change by reopening and revision (R & R).  After a lapse of about 16 years when it was "discovered" the 1993 determination was untoward, without intervening investigation, the 1993 determination cannot be changed.  Therefore, she remains entitled to benefits on Mr. Roberson's record; no overpayment and Medicare entitlement at 65.

***

The Decision "puts the cart before the horse" by concluding this client has been overpaid benefits without deciding the threshold issue of whether the initial 1993 determination of entitlement can be changed.  Without R & R[,] the initial 1993 determination of entitlement, though incorrect, is final <u>and</u> binding, not subject to change in any manner.

Although the Decision correctly states the threshold issue, it goes on to spuriously reject and not decide the issue.  All conclusions advanced for not deciding the issue of R & R are unsustainable (page 4, beginning with last paragraph).

> The issue of fraud is not properly before this office.  The issue before me is whether there was an overpayment because the claimant was remarried before age 60.  The initial eligibility in 1993 is not a determination that is being reopened because of fraud or similar fault.  This overpayment was realized in 2010, and this appeal arises from the date of the notice of overpayment in 2010 regardless of the months affected. ....  This overpayment is a post-entitlement issue.  The case involves material, correctable, clerical error with the application back in 1993, which was realized in 2010.

The issue of fraud (or similar fault) was the issue squarely presented by the initial and reconsideration determinations which reopened and revised to a denial the 1993 fully favorable determination of entitlement.  I realized the issue of R & R based on fraud or similar fault from the outset and proceeded accordingly with the various appeals (Ex.s 6, 12, 14, & 45).

My pre-hearing memorandum accurately states the evolution of this case up to hearing, as well as the issues and governing law (Ex. 45).  The threshold primary issue was not whether there was an overpayment because of this client's remarriage.  Whether there is an overpayment at all is contingent upon R & R of the initial 1993 determination of entitlement.  It is not a post-entitlement matter; it is one of entitlement.

Furthermore, the Decision is unequivocally impaired in finding the case involves material, <u>correctable</u>, clerical error in 1993 unrealized until 2010.  Material, ye; unrealized until 2010, yes; clerical error, perhaps; but absolutely not correctable.  The Decision cites no authority whatever for [its] proposition that without R & R there is a <u>correctable</u> error which results in overpayment.

20 CFR 404.989(a)(2) indicates R & R is appropriate for correction of clerical error in the computation or recomputation of benefits, not the situation here, then

only within 4 years (20 CFR 404.988(b), referencing .989). 20 CFR 404.988(c)(8) provides for correction of clerical error at [any time] only if a determination was fully or partially <u>unfavorable</u>. The 1993 determination of entitlement was fully favorable.

Therefore, the Decision not only misperceives and does not decide the appropriate threshold primary issue which was squarely presented, but concocts an issue/solution scenario which finds no support whatever in the law.

(Tr. 214-15) (emphasis in original). As Plaintiff's counsel explained, at the initial levels of review, the SSA may have applied the correct law but did not develop the facts in support of their legal conclusion. If the SSA had done so, it would have concluded, as the ALJ and the Appeals Council concluded, that Plaintiff was not at fault in causing the overpayment and that the record does not support a finding of fraud or similar fault. Further, as Plaintiff's counsel explained, the ALJ properly developed the facts but failed to apply the correct legal standards, despite Plaintiff's continued and consistent assertions throughout the administrative process . In seeking review of the ALJ's decision, therefore, Plaintiff's counsel elucidated the issues for the Appeals Council, as he had done with the ALJ, yet the Appeals Council again failed to apply the proper legal standards.

Upon consideration of the ALJ's decision, the Appeals Council determined that, though Plaintiff was not entitled to widow's benefits at any time, it was improper for the ALJ to assess an overpayment all the way back to the date of Plaintiff's 1993 entitlement absent a finding of fraud or similar fault (Tr. 12). As the Appeals Council noted, the "record does not indicate a finding of fraud or similar fault" (Tr. 12). The Appeals Council then attempted to justify the October 23, 2010 determination terminating Plaintiff's benefits as "a correction of the Administration's action," which "allowed for a reopening of a prior determination within four

years of the date of the initial determination" (Tr. 12).  According to the Appeals Council, the

October 2010 determination ceasing Plaintiff's benefits fell within four years of the November

2006 COLA determination, so, since the reopening period could not extend beyond four years

because of administrative finality, the SSA could only review payments from November 2006

though October 2010 (Tr. 12-13).

Under certain conditions, the SSA may reopen a final determination or decision on its own

initiative and may then revise that determination or decision.  20 C.F.R. §§ 404.987(b), 404.988.

For example, a determination or decision may be reopened within four years of the date of the

notice of initial determination if the SSA finds good cause to reopen the case, meaning (1) new

and material evidence is furnished, (2) a clerical error in the computation or recomputation of

benefits was made, or (3) the evidence that was considered in making the determination or

decision clearly shows on its face that an error was made.   20 C.F.R. §§ 404.988(b),

404.989(a)(1)-(3).  A determination or decision may be reopened at any time if it was obtained

by fraud or similar fault.  20 C.F.R. §§ 404.988(c)(1).

As the Appeals Council correctly noted, the February 1993 entitlement determination was

a binding, final decision since the determination was never appealed (Tr. 12).[6]  Rather than

concede that the February 1993 entitlement determination was improperly reopened, the Appeals

Council attempted to justify the reopening of Plaintiff's award of widow's benefits and belated

recoupment of the overpayment of those widow's benefits by citing to the November 2006 COLA

---

[6]  Indeed, initial determinations are final and binding unless appealed by the claimant or revised by the SSA and are thus subject to the rules of administrative finality. POMS GN 03101.040 A & 04001.030 B.

increase as an initial determination which may be reopened within four years of such determination upon a finding of good cause.  Under the guidelines established in the POMS, a COLA constitutes an initial determination subject to administrative and judicial review.  POMS GN 03101.050 C.  None of the three rationales for reopening the COLA increase as an "initial determination" exists on this record, however.  Specifically, no new and material evidence was furnished regarding the COLA increase or regarding Plaintiff's entitlement, which was not subject to reopening, since the record reflects that Plaintiff stated that she previously disclosed her 1982 marriage to the SSA at the time of her initial application for widow's benefits and the ALJ accepted that testimony in determining Plaintiff was not at fault.  Furthermore, there was no clerical error in the computation of the COLA, and, to the extent any evidence was considered in making the COLA increase, the SSA made no error in awarding the COLA increase on the widow's benefits.[7]  Accordingly, the Appeals Council's justification for reopening lacks merit and is, in short, procedurally wrong.  As such, the October 2010 overpayment notice was issued in error.

Notwithstanding, and as noted above, the Commissioner contends that the case should be remanded since, even though the ALJ determined Plaintiff was not at fault in causing the overpayment and the Appeals Council determined that the record indicated no finding of fraud or similar fault, the record was unclear as to whether Plaintiff reported both of her marriage dates

---

[7]  Notably, the regulations provide that the primary insurance amount may be *automatically* increased each December to keep up with rises in the cost of living.  20 C.F.R. § 404.270 (emphasis added).  Indeed, the POMS indicates that a 3.3% COLA increase became effective as of December 2006.  POMS RS 00601.120 C.  Neither the regulation nor the POMS provision refers to an individualized inquiry or any evidence considered in making a COLA award on an individual basis.

to Mr. Johnson when she initially filed for widow's insurance benefits.   Accordingly, the Commissioner asserts that remand is appropriate "for further development and an application of the similar fault analysis to determine whether the 1993 entitlement decision may be re-opened" (Doc. 21, at 4).  To reiterate, the Commissioner concedes, as she must, that the ALJ concluded that Plaintiff was not at fault in causing the overpayment.  The fault analysis required the ALJ to consider whether the facts showed that the overpayment to Plaintiff resulted from an incorrect statement made by Plaintiff which she knew or should have known to be incorrect, a failure by Plaintiff to furnish information she knew or should have known to be material, and acceptance of payment by Plaintiff which she either knew or could have been expected to know was incorrect (Tr. 25-26).  *See* 20 C.F.R. § 404.507.  The Commissioner also concedes, as she must, that the Appeals Council concluded that "[t]he record does not indicate a finding of fraud or similar fault" (Tr. 12).  Against that backdrop, however, the Commissioner contends that the case should be remanded to resolve factual issues as to the question of whether Plaintiff reported both marriage dates to the SSA when applying for benefits because the Appeals Council noted that it was unclear whether Plaintiff reported both marriages. According to the Commissioner, the resolution of the question on remand could affect whether an unrestricted reopening would be appropriate in this case under a similar fault determination.  *See* 20 C.F.R. §§ 404.988(c)(1).

Under the POMS, "similar fault" means knowingly making or causing to be made a false statement, misrepresentation, or omission of a fact that is material to the determination, or concealing information that is material to the determination.  POMS GN 02604.410 A.2.  In determining that Plaintiff was not at fault, the ALJ already concluded that the overpayment was

22

not a result of any incorrect statement or material omission on Plaintiff's behalf regarding her marriage date with Mr. Johnson (Tr. 25-27). *See* 20 C.F.R. § 404.507. Upon review of the ALJ's decision, the Appeals Council did not disturb the ALJ's finding in that regard and concluded that the record did not indicate a finding of fraud or similar fault (Tr. 11-12). Indeed, the record supports such a conclusion. During the administrative hearing, Plaintiff testified, under oath, that she provided two marriage certificates for her marriage to Mr. Roberson and two marriage certificates for her marriage to Mr. Johnson to the SSA representative at the time she applied for widow's benefits (Tr. 55-61, 170, 172-76, 241-44). Additionally, on the Social Security Application Development form, Plaintiff noted that she provided "2+2" proofs of marriage (Tr. 170). Both the ALJ and the Appeals Council reviewed the record, including Plaintiff's testimony regarding her provision to the SSA of both marriage dates to Mr. Johnson, in rendering their decisions and in finding that Plaintiff was not at fault and the record did not indicate a finding of fraud or similar fault.

The undersigned, therefore, fails to see the utility of remanding the case for further inquiry into the question of whether Plaintiff disclosed to the SSA her 1982 marriage to Mr. Johnson, especially in light of the fact that the case was improperly reopened. The ALJ has already conducted the analysis and determined that Plaintiff was not at fault. Furthermore, despite the Appeals Council's statement that the record was unclear as to whether Plaintiff disclosed to the SSA both of her marriage dates to Mr. Johnson, the record indicates that Plaintiff was forthright as to her marriages to Mr. Johnson both at the time of her application and throughout the entire

administrative process.[8]

In sum, the 1993 entitlement was improperly reopened upon a suspicion of fraud or similar fault. Once the facts were appropriately developed, the SSA properly determined that Plaintiff was not at fault for the overpayment of widow's benefits. Having finally reached a proper factual determination, the SSA then attempted to justify the improper reopening through improper procedural mechanisms to recoup the overpayment, including the purported reopening of the November 2006 COLA determination. Based on the foregoing, neither the ALJ nor the Appeals Council applied the correct legal standards in considering Plaintiff's appeals and no new evidence is needed to make a determination. In such circumstances, the failure to apply the

---

[8] Moreover, the undersigned fails to comprehend what steps could be taken by the Commissioner upon remand to resolve the issue of whether, at the time she applied for benefits, Plaintiff reported to the SSA both marriage dates to Mr. Johnson. Plaintiff consistently stated, and provided sworn testimony, that she produced the information at the time she initially applied for benefits. Since there was some question in the record of whether she had held herself out as married since 1982, she provided tax returns from 1982 through 1985 indicating that she listed herself as married, used the last name Johnson, and filed a joint return each year with Mr. Johnson (Tr. 195-98, 250). Both the ALJ and the Appeals Council considered Plaintiff's testimony and did not discredit the testimony or make a finding that Plaintiff was not credible. Furthermore, the record reflects that Plaintiff made a notation indicating that, at the time Plaintiff applied for benefits, Plaintiff provided two marriage certificates for her marriage to Mr. Roberson and two marriage certificates for her marriage to Mr. Johnson. Further, in filing the transcript of the administrative proceedings (Doc. 11), the Commissioner presumably provided all of the records considered and available from the SSA. Most importantly, the ALJ explicitly stated that the "initial eligibility in 1993 is not a determination that is being reopened because of fraud or similar fault" (Tr. 25-26), the ALJ determined Plaintiff was not at fault in causing the overpayment (Tr. 25-26), and the Appeals Council stated that the "record does not indicate a finding of fraud or similar fault" (Tr. 12). Accordingly, although the Commissioner believes the ends will justify the means, remanding for further investigation of the issue of whether Plaintiff provided both marriage dates for her marriage to Mr. Johnson when she applied for benefits as part of a "similar fault determination" would prove an exercise in futility and is unwarranted given the facts of the case.

correct legal standards provides grounds for reversal.  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citation omitted) (noting that reversal was warranted where the ALJ either failed to apply the correct legal standards or provide the reviewing court with sufficient basis to determine that the correct legal principles were followed).  In this instance, the case should be reversed and remanded with instructions that, because the reopening of Plaintiff's February 1993 determination and November 2006 COLA determination were in error and, as a result, the October 2010 overpayment notice was in error, Plaintiff's entitlement to widow's benefits be reinstated forthwith.  *See* 42 U.S.C. 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."); *see also Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) ("This court, however, may reverse the judgment of the district court and remand the case for an entry of an order awarding disability benefits where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." (citation omitted)); *see also Kleja v. Barnhart*, 220 F. Supp. 2d 1330, 1334 (M.D. Fla. 2002) (noting that "[t]his Court may reverse the decision of the Commissioner and enter an order awarding disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." (citations omitted)); *Richardson v. Apfel*, 44 F. Supp. 2d 1264, 1268 (M.D. Fla. 1998) ("Where the ALJ fails to apply the proper legal standard, the Court may reverse and remand for an award of benefits if no new evidence is needed to make a determination. ... Remanding to the ALJ would

25

serve no useful purpose and would only further delay plaintiff's receipt of benefits." (citation omitted)).

### IV.    Conclusion

For the foregoing reasons, it is hereby

RECOMMENDED:

1. The Commissioner's Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) with Remand (Doc. 16) be GRANTED IN PART AND DENIED IN PART.

2. The decision of the Commissioner be REVERSED and the matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner consistent with the recommendations set forth above.

3. The Clerk be directed to enter judgment for Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, this 31st day of December, 2014.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); M.D. Fla. R. 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) (*en banc*).

cc:     Hon. Steven D. Merryday
        Counsel of Record

27